**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

JAMES COURY HOLMES,

    Petitioner,

v.

JOHN V. FLOURNOY,

    Respondent.

CIVIL ACTION NO.: 2:15-cv-112

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner James Coury Holmes ("Holmes"), who is currently housed at the Federal Correctional Institution in Estill, South Carolina, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 while housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). (Doc. 1.) Respondent filed a Response. (Doc. 12.) Holmes filed a Reply to Respondent's Response. (Doc. 17.) Respondent then filed a Reply Brief in Support of his Response, (doc. 19), to which Holmes filed a Rebuttal, (doc. 21). For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Holmes' Petition **in part** and **DENY** Holmes' Petition **in part**, **CLOSE** this case, and **DENY** Holmes *in forma pauperis* status on appeal.

## BACKGROUND

Holmes was convicted in the District of South Carolina of bank robbery and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2113(a), (d), and 924(c)(1). (Doc. 12-1, pp. 8–9.) He was sentenced to 1,057 months' imprisonment. (Id.)

Holmes has a projected release date of September 3, 2076, via good conduct release, to be followed by five years' supervised release. (Id. at p. 2.)

In addition to Holmes' term of imprisonment, the sentencing court imposed a special assessment of $800.00 and ordered him to pay $82,423.00 in restitution. (Id. at p. 3.) The court recommended that Holmes participate in the Inmate Financial Responsibility Program ("IFRP") to satisfy his assessment and restitution obligations. (Id. at p. 11.) On October 14, 2013, while housed at FCI Jesup, Holmes signed an agreement pursuant to the IFRP wherein he agreed to pay $25.00 per month beginning in November 2013. (Id. at pp. 4, 22.) The Bureau of Prisons ("BOP") reassessed Holmes' financial plan the following year and increased his monthly payments to $35.00 per month, after determining that Holmes had deposited $1,050.00 into his inmate trust account during the preceding six months. (Id. at p. 4.) Holmes refused to pay this increased amount and was placed in IFRP refuse status, which resulted in the loss of certain privileges.

## DISCUSSION

"A person sentenced to pay a fine or other monetary penalty . . . shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). Accordingly, the BOP enacted the IFRP to encourage "each sentenced inmate to meet his or her legitimate financial obligations." Williams v. Pearson, 197 F. App'x 872, 876 (11th Cir 2006) (citing 28 C.F.R. § 545.10). "The regulations provide that, when an inmate has a financial obligation, including the special assessment and restitution imposed at sentencing, BOP staff 'shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation.'" Id. at 876–77 (citing 28 C.F.R. § 545.11.) In doing so, BOP staff conduct an independent assessment of an inmate's ability to

pay by reviewing the inmate's financial obligations and all available documentation. 28 C.F.R. § 545.11(a). The BOP may obtain payments from funds earned through prison employment as well as from funds received from outside sources, such as money sent by relatives. Id. at § 545.11(b). "The IFRP . . . is a voluntary program[.]" Williams, 197 F. App'x at 877 (citing 28 C.F.R. § 545.11(d)). However, refusal by an inmate to participate in the IFRP or to comply with the provisions of his or her financial plan ordinarily results in the limitation of certain privileges. See id. at 877 (citing 28 C.F.R. § 545.11(d)).

In his Petition, Holmes first contends the sentencing court improperly delegated the duty to manage his restitution payments to the BOP. (Doc. 1, pp. 8, 9.) Next, Plaintiff argues BOP staff did not properly calculate exemptions before determining his monthly restitution payment, as required by BOP Program Statement 5380.08. (Id.) Alternatively, Plaintiff argues that he is not required to pay restitution payments until he is released from prison. (Id. at p. 9.) Finally, Holmes argues prison staff violated his due process rights by reducing his pay grade at his prison detail, restricting his commissary purchases to $25.00 per month, and placing him in a three-man cell, in response to Holmes' refusal to make increased IFRP payments.[1]

Respondent contends the BOP followed policy in calculating Holmes' increased monthly restitution payment and that the sentencing court did not improperly delegate this duty to the BOP. (Doc. 12, pp. 1–2.) Respondent further contends that, to the extent Holmes challenges the sentencing court's judgment as to his restitution payment, that claim is not cognizable via 28 U.S.C. § 2241 and must be brought pursuant to 28 U.S.C. § 2255. Finally, Respondent argues

---

[1] Holmes also appears to argue that the BOP improperly modified the sentencing court's judgment concerning his restitution payment. (Doc. 1, p. 3.) However, changing the rate at which Plaintiff pays restitution does not affect the sentencing court's order that Holmes pay a total of $82,423.00 in restitution. Accordingly, this argument is without merit, as the BOP did not modify the sentencing court's judgment by modifying Holmes' payment schedule.

3

that Holmes' withdrawal of privileges pursuant to his refusal to participate in the IFRP does not violate his constitutional rights. The Court addresses each of these contentions in turn.

**I.    Whether the Sentencing Court Properly Delegated IFRP Duty to BOP**

"Pursuant to the [Mandatory Victims Restitution Act]" ("MVRA"), "the district court must order restitution to victims in the full amount of their losses." <u>Young v. Augustine</u>, No. 5:11cv396, 2012 WL 6955480, at *4 (N.D. Fla. Dec. 12, 2012) (citing 18 U.S.C. §§ 3663A(a)(1), 3664(f)(1)(A)). "Once restitution is ordered, the district court must specify the manner and schedule according to which restitution will be paid." <u>Id.</u> (citing 18 U.S.C. § 3664(f)(1)(B)(2)). "A district court may order that restitution be paid in a single, lump sum payment, partial payments at specified intervals, or a combination of payments at specified intervals." <u>Id.</u> (citing 18 U.S.C. § 3664(f)(1)(B)(3)). "When a restitution order permits other than immediate payment, the district court must set the payment schedule." <u>Id.</u> (citing 18 U.S.C. § 3572(d)).

Based upon the statutory provisions laid out above, Holmes contends that setting his payment schedule is a "core judicial function," and that the BOP's assumption of that duty is illegal. While Holmes attempts to characterize this argument as one regarding the BOP's execution of his sentence, his claim that the sentencing court improperly delegated its duty to set his payment schedule to the BOP challenges the validity of that sentence. Challenges to the validity of a restitution order may not be brought pursuant to Section 2241. <u>See</u> <u>Austin v. United States</u>, 368 F. App'x 53, 54 (11th Cir. 2010) (petitioner's claim that district court improperly delegated authority to BOP to set restitution payment schedule may not be brought in Section 2241 petition); <u>Williams</u>, 197 F. App'x at 877 (same); <u>see also</u> <u>Simmons v. United States</u>, 232 F. App'x 952, 953 (11th Cir. 2007) ("While [petitioner] characterizes his argument as an attack on

4

the execution of his sentence, a charge of improper delegation challenges the validity of the sentence itself."). Accordingly, Holmes may not pursue this claim via his Section 2241 Petition.[2] The Court should **DISMISS** this portion of Holmes' Petition on this basis.

## II. Whether the BOP Properly Calculated Petitioner's IFRP Payments

Pursuant to BOP Program Statement 5380.08, "[i]n developing an inmate's financial plan, the Unit Team shall first" note the balance of the inmate's prison trust fund account. (Doc. 12-1, p. 86.) The Unit Team shall then "subtract from the trust fund account [balance] the inmate's minimum payment schedule, according to his UNICOR pay grade or non-UNICOR work assignment.[3] (Id. at p. 87.) "The Unit Team shall then exclude from its assessment $75.00 [per] month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate opportunity to better maintain telephone communication under the Inmate Telephone System [("ITS").]" (Id. at p. 86.)

Thereafter, "[a]t each program review, when reviewing the inmate's financial plan, the Unit Team must: determine the total funds deposited into the inmate's trust fund account for the previous six months; subtract the IFRP payments made by the inmate during the previous six

---

[2] Moreover, even if Holmes' claim were properly brought under Section 2241, his claim would fail. In United States v. Prouty, 303 F.3d 1249, 1244–45 (11th Cir. 2002), the Eleventh Circuit Court of Appeals held that the MVRA imposes upon district courts a non-delegable duty to order the amount and payment schedule of restitution. Subsequent to Prouty, however, the Eleventh Circuit acknowledged that, where the district court orders simply that restitution is payable "immediately", there is no improper delegation regarding setting the payment schedule. United States v. Martinez, 320 F.3d 1285, 1288–89 (11th Cir. 2003). An order by the district court of the "immediate" payment of restitution is generally interpreted to require payment to the extent that the defendant can make it in good faith, beginning immediately. Foster v. United States, 290 F. Supp. 2d 5, 9 (D.D.C. 2003). Here, the sentencing court directed that Holmes "immediately" pay a lump sum of $82,423.00, and that any balance due was subject to payment through the IFRP during Holmes' imprisonment. (Doc. 12-1, pp. 9–11.) To that end, Holmes signed a contract with the BOP to participate in the IFRP. Contrary to Holmes' contention, this chain of events comports with the relevant statutory scheme and Eleventh Circuit case law. Accordingly, even if Holmes' claim that the sentencing court improperly delegated the setting of his payment schedule to the BOP were cognizable under Section 2241, that claim would fail.

[3] This amount is $25.00 for non-UNICOR and UNICOR grade 5 inmates and "not less than 50% of [ ] monthly pay" for inmates assigned to grades 1 through 4 in UNICOR. (Doc. 12-1, p. 87.)

5

months; and subtract $450 (i.e., $75 x 6 months, ITS exclusion)." (Id.)  "Any money remaining after the above computation may be considered for IFRP payments, regardless of whether the money is in the inmate's trust fund [ ] account.  The Unit Team has discretion to consider all monies above that computation to adjust the inmate's IFRP plan." (Id.)  "The Unit Manager is the determining authority when it comes to deciding whether an inmate's IFRP payments are commensurate with his/her ability to pay.  This decision is solely at the discretion of the Unit Manager and is to be decided on a case-by-case basis.  Variations in what is considered a commensurate payment are expected and are appropriate since the determination of commensurate payments is based on individual circumstances." (Id. at pp. 86–87.)

A review of the record reveals that BOP staff adhered to Program Statement 5380.08 and properly calculated Holmes' new IFRP payment.  First, the Unit Team noted that Holmes deposited $1,050.00 into his inmate trust account during the previous six months.  To determine his monthly payment, the Unit Team then subtracted two figures from the total of Holmes' deposits from the preceding six months.  First, they subtracted $450.00 to account for phone usage.  This deduction comports with the directive set out in Program Statement 5380.08, Section 8(b) that the Unit Team must subtract $450.00 for phone usage, prior to calculating funds available for IFRP payments. (Id. at p. 86.)  Next, the Unit Team subtracted $150.00, based upon Holmes' prior IFRP payments of $25.00 per month for six months, as directed by Section 8(b) of Program Statement 5380.08.  After subtracting $450.00 and $150.00—a total of $600.00—from $1,050.00, Holmes had $450.00 remaining in his inmate account.  Divided into six month increments, this $450.00 surplus broke down to a $75.00 per month surplus in Holmes' inmate account.  The BOP determined that Holmes could pay $35.00 per month based

upon this calculation. (Doc. 12-1, p. 4.) Accordingly, BOP staff properly calculated Holmes' IFRP payments in conformity with the relevant Program Statement.

Holmes also argues that the Unit Manager's approval of a $10.00 increase in Holmes' IFRP payments was an abuse of discretion. (Doc. 1, p. 2.) "When a prisoner makes a non-constitutional challenge to the execution of a sentence under § 2241, he is required to make a strong showing that the manner in which his sentence is being executed is resulting in a miscarriage of justice." Young, 2012 WL 6955480, at *4 (citing Williams, 197 F. App'x at 877). The sentencing court's judgment in Holmes' underlying criminal case directed that Holmes immediately pay a lump sum of $82,423.00, and that any balance due was subject to payment through the IFRP during Holmes' imprisonment. (Doc. 12-1, pp. 9–11.) To that end, Holmes signed a contract with the BOP to participate in the IFRP. Based upon Holmes' six months' deposit of $1,050.00 in his inmate account, the BOP reevaluated Holmes' ability to pay and increased his IFRP payments by $10.00 each month. The Unit Manager's decision appears reasonable, as the total deposits to Holmes' inmate trust account far outweigh the small increase in his restitution payment. Therefore, this payment increase does not result in any "miscarriage of justice" deserving of this Court's intervention. For all the aforementioned reasons, the Court should **DENY** this portion of Holmes' Petition, as he has not shown the BOP improperly executed the restitution portion of his sentence.[4]

---

[4] Holmes also argues that he has no obligation to pay restitution until he is released from prison and, therefore, that the BOP's collection of restitution is improper. The sentencing court's judgment stated that "it shall be a condition of supervised release that [Holmes] pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release[.]" (Doc. 12-1, p. 10 (emphasis added).) This portion of the sentencing court's judgment specifies that Holmes shall continue to pay restitution after his release from prison. Contrary to Holmes' interpretation of this language, it does not absolve him of his obligation to pay restitution while imprisoned.

7

**III.     Whether the BOP Violated Holmes' Due Process Rights**

Holmes also contends that the loss of privileges resulting from his refusal to participate in the IFRP program violates his due process rights.[5] (Doc. 1, p. 10.)  Respondent argues that Holmes' loss of privileges does not result in any miscarriage of justice and that the Court should, therefore, reject his claim.

BOP regulations specify that an inmate who refuses to participate in his financial responsibility plan will forego certain privileges.  For example, the inmate "will not receive performance pay above the maintenance level, or bonus pay, or vacation pay;" "will not be assigned to any work detail outside the secure perimeter of the facility;" "will not be placed in UNICOR;" "shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates;" and "will be quartered in the lowest housing status[.]"  (Id. at pp. 90–91.)  "While the Eleventh Circuit has not yet done so in a published opinion, every circuit court that has addressed the constitutionality of the IFRP has approved of it and found it constitutional."  Young, 2012 WL 6955480, at *5 (citing United States v. Lemoine, 546 F.3d 1042, 1050 (9th Cir. 2008) (imposition of consequences for declining to participate in IFRP does not violate prisoners' due process rights); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir. 1998) (same); Dorman v. Thornburgh, 955 F.2d 57, 58–59 (D.C. Cir. 1992) (same); Johnpoll v. Thornburgh, 898 F.2d 849, 851 (2d Cir. 1990) (same); James v. Quinlan, 866 F.2d 627, 629 (3d Cir. 1989) (same)).  The Eleventh Circuit has rejected due process challenges to the IFRP in unpublished opinions.  See West v. Zenk, 276 F. App'x 929, 930 n.3 (11th Cir. 2008) (IFRP is reasonably related to legitimate penological interests and is thus constitutional); Williams, 197 F. App'x at 876–77 (rejecting claim that IFRP

---

[5] Holmes alleges that prison staff reduced his pay grade at his prison detail, restricted his commissary purchases to $25.00 per month, and placed him in a three-man cell.  (Doc. 1, p. 7.)

violates an inmate's due process rights). Accordingly, Holmes' claim that the loss of privileges, as set out in BOP Program Statement 5380.08, violates his due process rights fails.

Moreover, the reduction in Holmes' pay grade at his prison detail, restriction of his commissary purchases to $25.00 per month, and his placement in a three-man cell do not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that they invoke his liberty interest. See Sandin v. Conner, 515 U.S. 472, 484–85 (1995) (holding that even a "concededly punitive" transfer to less desirable housing conditions did not exceed prison officials' authority because it did "not present a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence"). As Holmes has not shown that he suffered any atypical or significant hardship as a result of his refusal to participate in the IFRP, the Court should **DENY** this portion of Holmes' Petition on this additional basis.

### IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Holmes leave to appeal *in forma pauperis*. Though Holmes has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

9

theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Holmes' Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Holmes *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS in part** and **DENY in part** Holmes' Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Holmes leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Holmes and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of August, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA